IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS FISHER,

    Plaintiff,

v.                                                                                        Case No. 6:14-CV-1264-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Thomas Fisher seeks review of a final decision by defendant, the Commissioner of Social Security, denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. In his pleadings, plaintiff alleges error with regard to the Commissioner's decision that plaintiff is able to perform "other work" that exists in significant numbers in the national economy. Upon review, the court finds that the Commissioner's decision is supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

**I.**    **Factual and Procedural Background**

Plaintiff's medical record, while it dates back to May 2000, is rather sparse. He was given a provisional diagnosis of thoracic outlet syndrome, but this was ultimately ruled out several months later. In late 2007 and early 2008, plaintiff was diagnosed with severe sleep disordered breathing and obstructive sleep apnea and was told to limit his driving and/or

operation of heavy machinery until his sleep pathology could be corrected.  Plaintiff's records then jump to April 2008, when he was seen by Dr. James J. Shafer for orthopedic issues, mainly in his lower extremities.  He presented with normal gait and station and had excellent strength.  His knees were not tender or swollen and he had a normal range of motion.  Plaintiff was diagnosed with scoliosis (congenital), bilateral knee pain, and leg discrepancy with the right leg being slightly longer than the left.

Plaintiff returned to Dr. Shafer in May 2009 complaining of chronic back pain.  He had a good range of motion, but some arthralgia in his knees.  Plaintiff's complaints of bilateral knee pain reappeared in July 2009 when he saw Dr. Ray House.  Dr. House noted chronic sequalae of an old injury in plaintiff's right knee, but reported that neither knee showed any acute abnormality.  Radiological exams taken in January 2010 noted post-surgical changes in plaintiff's left leg, multiple calcific densities along the patellar tendon in his right leg, and osteophyte at the anterior tibia which might encroach upon the joint space in his left knee.  Plaintiff rated his pain as a nine out of a possible ten.

On January 13, 2010, plaintiff saw orthopedic physician's assistant Bryan Meece and received an injection of Synvisc into his left knee and was instructed to take Tylenol as needed.  Plaintiff was also prescribed Celebrex.  When plaintiff returned to Meece in March 2010, he reported that he had run out Celebrex and had not refilled it in quite some time.  Radiological exams of plaintiff's knees showed no changes.

On December 19, 2010, plaintiff underwent a Physical Residual Functional Capacity Assessment with state agency examiner Dr. Bernard Stevens.  Dr. Stevens concluded that plaintiff could: (1) occasionally lift and/or carry fifty pounds, (2) frequently lift and/or carry twenty-five pounds, (3) stand and/or walk for a total of six hours during an eight-hour workday,

(4) sit for a total of six hours during an eight-hour workday, and (5) engage in limited pushing and pulling of his lower extremities. Plaintiff was limited to only occasional kneeling, crouching, and crawling, and to never climbing ladders, ropes, or scaffolds. Plaintiff had no manipulative, visual, communicative, or environmental limitations.

On May 27, 2011, Dr. William Short completed a Physical Medical Source Opinion Questionnaire on behalf of plaintiff. After noting that he had only seen plaintiff one time (for the purpose of completing the Questionnaire), Dr. Short determined that plaintiff could: (1) sit for twenty minutes at a time, for less than two hours per day; and (2) stand for forty-five minutes at a time, for approximately four hours per day. Dr. Short also concluded that plaintiff would require periods of walking around during his day, approximately every forty-five minutes, and would require a job that would allow him to take unscheduled breaks and shift positions at will. Dr. Short surmised that plaintiff was limited to rarely lifting and/or carrying twenty pounds, stooping, crouching, squatting, and climbing ladders and stairs.

On August 23, 2012, plaintiff saw physician's assistant Kenneth Rivera, complaining of persistent chronic bilateral knee pain. It was noted that plaintiff had some pain in his left knee upon squatting. Plaintiff was offered, but declined, steroids or injections. Radiological evaluations remained unchanged. On January 8, 2013, plaintiff underwent radiological evaluations on his back which showed multi-level degenerative disc desiccation with disc space narrowing at the C6-7 vertebrae and an area of linear T2 signal abnormality at the C3-4 vertebrae.

Simultaneous to his physical ailments, plaintiff also underwent minimal treatment for mental health issues. On April 28, 2008, Dr. Michael H. Schwartz, Ph.D., noted that plaintiff had sequential and understandable thought content, but presented with a rather passive approach

to life. Plaintiff's affect was low key, and sensorium and cognition testing placed him at low-average intelligence. Dr. Schwartz determined that plaintiff could remember work location and procedures, understand and follow simple instructions, and had adequate attention, concentration, and short-term memory. Based on his evaluation, Dr. Schwartz concluded that plaintiff did not suffer from any severe psychiatric symptoms that would prevent him from working, diagnosed him with major depression (single episode/mild intensity), and assigned him a Global Assessment of Functioning ("GAF") score of 60, indicating moderate symptoms.[1]

Plaintiff's visit with Dr. Schwartz a year later resulted in remarkably similar conclusions. Dr. Schwartz again determined that plaintiff had no psychiatric symptoms that would prevent him from working, diagnosed him with an adjustment disorder with depressed mood, and assigned him a GAF score of 55, indicating moderate symptoms. Several months later, in November 2009, plaintiff was prescribed Prozac.

On August 23, 2010, plaintiff underwent a court-ordered mental health evaluation at the Central Kansas Mental Health Center.[2] He was diagnosed with adjustment disorder with anxiety (chronic), relational problems (not otherwise specified), and assigned a GAF score of 57, again indicating moderate symptoms.

On January 5, 2011, plaintiff underwent a Psychiatric Review Technique with state examiner Dr. Joseph Cools, Ph.D. Dr. Cools determined that plaintiff suffered from adjustment disorder with mixed features of anxiety and depression. The examiner also concluded that plaintiff had no functional limitations in any of the following tested areas: (1) activities of daily

---

[1] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM-IV"), at 32.

[2] It appears from the record that this evaluation was done in connection with Children in Need of Care proceedings.

4

living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; or (4) episodes of decompensation.

Plaintiff filed for DIB on September 8, 2010, and for SSI on September 16, 2010. In both applications, plaintiff alleged disability beginning November 11, 2007. His claim was denied initially on February 11, 2011, and upon reconsideration on April 22, 2011. Plaintiff timely filed a request for an administrative hearing, which took place on October 3, 2012, before Administrative Law Judge Catherine R. Lazuran. Plaintiff, represented by counsel, appeared and testified via video. Also testifying was Vocational Expert Carly Coughlin.

At the time of the hearing, plaintiff was forty years old and married with two teenage children. He graduated from high school, had some college, and spent time in the Navy. Plaintiff testified that he last worked less than full time in November 2007 as a photographer taking pictures of vehicles and posting them on websites. He left the job after he was terminated. Prior to this position, plaintiff testified that he worked for two years in a supermarket deli, for two years in retail sales at a discount store, and for various lengths of time in several other retail positions. He also stated that he once worked as a truck driver, but was let go as a result of complaints about his driving. Plaintiff indicated that he had looked for work since November 2007, but ran into problems "trying to get a job and falling asleep at the wheel." Dkt. 9-3, at 41. He stated that he had only stopped looking for work a couple of months prior to the hearing. Plaintiff received military disability benefits and food stamps.

When asked whether he could work, plaintiff answered in the negative, testifying that "with the medical problems that I have with my foot, my knees, my back, my sleep apnea, my memory, it makes it hard to actually do a lot of jobs, and remember what I'm supposed to do all the time." Dkt. 9-3, at 43. Plaintiff indicated that he was on several pain medications, including

Aleve, Lortab, and Tylenol. He stated that, although he was prescribed a continuous positive airway pressure ("CPAP") machine for his sleep apnea, he did not use it because he could not afford the replacement parts and the cost was only partially covered by his insurance. Plaintiff also noted that the benefits of the Synvisc injection only lasted three or four days, a week at the most.

Plaintiff testified that he could lift approximately five to ten pounds and could take care of personal hygiene needs, but could not do any household chores. He stated that he could only go grocery shopping if accompanied by one of his children and otherwise did not usually leave the house. Plaintiff indicated that he could no longer do any of the jobs he formally did because they all involved too much standing, walking around, bending, and heavy lifting. In response to a question about his activities of daily living, plaintiff testified that he helps his children and his wife, watches television, and checks his email.

In addition to plaintiff's testimony, the ALJ also sought the testimony of a vocational expert to determine how, if at all, plaintiff's impairments and limitations affected his ability to return to the workforce. The VE testified described plaintiff's past work as a photographer as light work, stock clerk as heavy work, retail salesclerk as light work, deli worker as medium work, truck driver as medium work, plumber's assistant as heavy work, and tool rental clerk as medium work. Based upon plaintiff's testimony and her own review of plaintiff's entire record, the ALJ asked the VE a series of hypothetical questions that included varying degrees of limitation on actions such as lifting, standing, walking, sitting, climbing, kneeling, crouching, and crawling. With each hypothetical posed, the restrictions would grow, ultimately concluding with the following:

> . . . the person were able to lift 20 pounds occasionally, and 10 pounds frequently, and could stand and walk about four of eight hours, rather than six, and sit . . .

> four to six of eight hours, needed an option to sit or stand . . . and . . . could occasionally twist, rarely stoop, climb, crouch, or squat . . . .

Dkt. 9-3, at 70-71. The VE testified that there were available positions in the national economy, including telemarketer and cashier II. The VE further indicated that, if the individual were to miss work two times per month in additional to these limitations, it would be work preclusive.

The ALJ issued her decision on December 18, 2012, finding that plaintiff suffered from a variety of severe impairments including osteoarthritis of the knees (post surgery), lumbago or lumbar scoliosis, and a history of obstructive sleep apnea. Despite these findings, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that plaintiff retained the residual functional capacity to perform light work, as that term is defined under Social Security Regulations, with the following limitations and/or exceptions: (1) only occasionally lift twenty pounds; (2) only frequently lift ten pounds; (3) stand and walk four hours out of an eight-hour day; (4) sit up to four to six hours during an eight-hour day; (5) sit/stand option; (6) never climb ladders, ropes, or scaffolds; (7) occasionally kneel, crawl, and twist; (8) rarely stoop, climb, crouch, or squat; (9) occasionally reach or lift overhead with the right arm; (10) rarely reach or lift overhead with the left arm; (11) no concentrated exposure to hazards; and (12) little to no driving. The ALJ therefore concluded that plaintiff had not been under a disability since November 11, 2007, the alleged onset date. This decision became the final decision of the Commissioner on June 17, 2014, after the Appeals Council denied review.

On August 25, 2014, plaintiff filed an Amended Complaint in the United States District Court for the District of Kansas seeking reversal and the immediate award of benefits or, in the

alternative, a remand to the Commissioner for further consideration. Given plaintiff's exhaustion of all administrative remedies, his claim is now ripe for review before this court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at

9

1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

### III.     Analysis

In his assignment of error, plaintiff argues that the ALJ erred at step five in finding that plaintiff could perform other jobs that exist in significant numbers in the national economy. More specifically, plaintiff alleges that his "rare ability to stoop" so greatly erodes the light vocational base that "the identification of a few jobs that Plaintiff is supposedly capable of performing is inconsequential . . . ." Dkt. 15, at 15-16.  The court disagrees.

Courts in this Circuit have long held that the testimony of a vocational expert may constitute substantial evidence upon which the ALJ may rely at step five of the sequential analysis.  However, in order to be considered substantial evidence, "the ALJ must formulate and ask hypothetical questions that 'include a full description of [the] claimant's impairments.'" *Waltemire v. Colvin*, 2014 U.S. Dist. LEXIS 105285, at *14 (D. Kan. Aug. 1, 2014) (quoting *McKitrick v. Barnhart*, 364 F. Supp. 2d 1272, 1287 (D. Kan. 2005)).  An ALJ must "accept and include in the hypothetical question only those limitations supported by the record." *Id*. (quoting *McDonald v. Barnhart*, 358 F. Supp. 2d 1034, 1042 (D. Kan. 2005)).  If an ALJ finds that the claimant cannot perform a *full* range of work in a particular exertional category, she must "describe particularly and precisely the additional limitations in [her] written decisions and hypotheticals to the VE." *Id*. (citing *Vail v. Barnhart*, 84 F. App'x 1, 4-5 (10th Cir. 2003)).

Here, as clearly set forth in the hypothetical listed above, the ALJ very clearly set forth all of plaintiff's limitations, including those relating to his very limited (i.e., rare) ability to stoop, climb, crouch, or squat.  As such, the ALJ was entitled to rely on the VE's answer with regard to what "light work" positions, if any, were available to an individual with these limitations.

What is puzzling about plaintiff's argument, however, is that it is somewhat non-traditional.  Instead of arguing that the ALJ failed to include all of his impairments in the hypothetical presented to the VE, thereby prohibiting the ALJ from relying on the assessment of the VE, plaintiff *agrees* that the ALJ properly included all of his limitations in the hypothetical.  The problem, plaintiff argues, is that because of these limitations, the light work base is so eroded that any jobs potentially left over are merely "inconsequential."  This was certainly not the impression of the VE, who identified at least two positions, telemarketer and cashier II, which could adequately accommodate all of plaintiff's limitations.  Indeed, both the DOT description for telemarketer and cashier II specifically state that stooping, climbing, crouching, and squatting are "not present – activity or condition does not exist." *See Occupational Group Arrangement*, 1991 WL 671840 (cashier II), 1991 WL 672624 (telephone solicitor).  Therefore, these jobs are entirely consistent with plaintiff's limited abilities.

Plaintiff relies on a series of Social Security Rulings and cases to make his argument that a finding of "rarely" able to stoop, climb, crouch, or crawl be treated in the same way for light work as they are for sedentary work.  Relying on SSR 96-9p, plaintiff notes that

> [a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations.  A complete inability to stoop would significantly erode the unskilled sedentary occupational base and usually results in a finding that the individual is disabled.

Dkt. 15, at 16.  Plaintiff misquotes the Ruling, which *actually* reads as follows:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations.  A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would *usually* apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.  *Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping*.

SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996) (emphasis added).

11

The court notes that SSR 96-9p does not apply to plaintiff's situation, as he was not limited to sedentary work and the Ruling concerns *only* sedentary work.  However, even for comparison purposes, the ALJ did exactly what the regulations instruct her to do: in situations where the individual is limited to less than occasional stooping (i.e., *rare*), she consulted a vocational expert, who, based on her experience, was able to provide the ALJ guidance as to whether jobs were actually available to plaintiff despite this severe limitation.

Plaintiff also relies on SSR 83-14 for the ideal that

> to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job).  SSR 83-14 thus infers that light work is incompatible with a less than occasional ability to stoop in regard to most jobs.

Dkt. 15, at 16.  However, SSR 83-14, by definition, pertains to the application of "the grids."

> The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience.  In summary, the grids should not be applied conclusively in a particular case unless the ALJ finds that: 1) the claimant has no significant nonexertional impairment, 2) *the claimant can do the full range of work at some RFC level on a daily basis*, and 3) the claimant can perform most of the jobs in that RFC level.

*McLean v. Astrue*, 2012 U.S. Dist. LEXIS 134313, at *22-23 (D. Kan. Sept. 20, 2012) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)).  Here, the ALJ specifically noted that she was *not* using the grids to make her determination *because of* the fact that plaintiff could not perform a full range of light work.  Dkt. 9-3, at 19-20, 24.[3]  As such, SSR 83-14 does not apply.

---

[3] The court also notes that plaintiff argues that his case provides an "excellent opportunity in regard to providing a statement of parity . . . in consideration and proper contemplation of the erosion of the light vocational base and hence the availability of jobs as impacted by specific and relevant postural considerations; the ability to bend/stoop specifically.  This is no small trivial matter, nor consideration not worthy of the attention and proactive interaction of the Circuit in addressing this issue."  Dkt. 21, at 1.  As a general rule, "[c]ourts grant an agency's interpretation of its own regulations considerable legal leeway."  *Barnhart v. Walton*, 535 U.S. 212 (2002) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).  Whether the Social Security Administration deems it necessary to

For all of these reasons, plaintiff's assignment of error is without merit and is therefore dismissed.

**IT IS THEREFORE ORDERED** this 22nd day of June, 2015, that plaintiff's appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE

---

come up with a rule regarding severe restrictions and stooping, climbing, crouching, or squatting in relation to light work is not for this court to say. Nor is it for this court to suggest that the Tenth Circuit somehow adopt such a finding.